**STATE OF LOUISIANA**

**VERSUS**

**SAMMIE DAVIS**

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. 04-3590
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

**J. DAVID PAINTER**
**JUDGE**

**********

**Thibodeaux, C.J., dissents in part and assigns written reasons.**

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and
J. David Painter, Judges.

**CONVICTION AFFIRMED; SENTENCE AMENDED WITH
INSTRUCTIONS AND AFFIRMED AS AMENDED.**


A. Bruce Rozas
P.O. Box 280
Mamou, Louisiana 70554
Counsel for Defendant-Appellant:
    Sammie Davis

Douglas L. Hebert, Jr.
DISTRICT ATTORNEY
John E. Demoruelle
ASSISTANT DISTRICT ATTORNEY
P.O. Drawer 839
Oberlin, Louisiana 70655
Counsel for Plaintiff-Appellee:
    State of Louisiana

**PAINTER, Judge**

Following a trial by jury, Defendant, Sammie Davis, was convicted of possession with intent to distribute cocaine, in violation of La.R.S. 40:967(A)(1). He was sentenced to twenty years at hard labor to run consecutively to any sentence he might be serving at the time of the present conviction. Defendant was advised that he was not eligible for diminution of sentence. Defendant now appeals, asserting the four assignments of error discussed below. For the following reasons, we affirm the Defendant's conviction and amend the Defendant's sentence to delete the statement denying diminution eligibility with instructions to the trial court to make an entry in the minutes to reflect this change. The sentence is affirmed as amended.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 2004, Roger Christian, a deputy with the Allen Parish Sheriff's Office, received information from a confidential informant that Defendant was selling cocaine. According to the informant, Defendant was driving a gray, four-door Mercury Sable. The informant further told the deputy that both the Defendant and the vehicle could be found in the parking lot of a convenience store in Oakdale, Louisiana, and that the cocaine was in a blue tin can inside the car. Acting on this information, Deputy Christian went to the specified location where he found the Mercury Sable, as described by the informant, parked along the roadway. Deputy Christian could see a blue tin can on the front seat of the vehicle. Defendant was standing approximately twenty feet away from the vehicle. Defendant told Deputy Christian that the vehicle belonged to his girlfriend, Tara Williams, but that he was responsible for the vehicle. Defendant denied permission to search the vehicle, so Deputy Christian obtained a search warrant. Subsequent to the search, Deputy Christian found ten rocks of crack cocaine in the blue tin can inside the vehicle.

1

Approximately one week later, Defendant was arrested and charged with one count of possession of a controlled dangerous substance, Schedule II, with intent to distribute, in violation of La.R.S. 40:967(A)(1). Trial by jury commenced on November 16, 2004, at which time Defendant made oral motions to continue trial and to suppress evidence. The motions were denied. The jury found Defendant guilty as charged. Defendant was sentenced to twenty years at hard labor to be served consecutively with any sentence which he may have been serving at that time.

On appeal, Defendant raises four assignments of error: (1) the trial court erred when it denied his oral motions to continue trial and to suppress evidence; (2) the trial court erred when it refused to instruct the jury regarding one of the State's witnesses who failed to appear; (3) the trial court erred when it allowed other crimes evidence to be presented at trial without a proper *Prieur* hearing; and (4) the evidence was insufficient to sustain the verdict.

**DISCUSSION**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note that, at sentencing, the trial court stated as follows:

> Mr. Davis, you're not eligible for diminution of sentence, for good time under Louisiana Revised Statute 15:571.3C because you have been convicted one or more times of violations of the Louisiana Controlled Dangerous Substance Law, which are felonies. That is also in accordance with law.

The sentencing minutes characterize the trial court's statement regarding diminution of sentence as follows: "the court informs the Defendant that he is not eligible for diminution of sentence for good time in accordance with LSA R.S. 15:571.3(C)(1)(r)."

This statement by the trial court was not merely an advisement, but was an actual denial of eligibility for diminution of sentence. In *State v. Narcisse*, 97-3161, p. 1 (La. 6/26/98), 714 So.2d 698, 699, the supreme court stated the following regarding a trial court's authority to deny eligibility for diminution of sentence:

> [A] trial judge lacks authority under La.R.S. 15:573.1(C) to deny a defendant eligibility for good time credits against his sentence, because that statute is "directed to the Department of Corrections exclusively." *State ex rel. Simmons v. Stalder*, 93-1852 (La. 1/26/96), 666 So.2d 661. Moreover, even the Department of Corrections lacks that authority under La.R.S. 15:571.3(C) in a case in which the trial court has not formally adjudicated and sentenced the defendant as a multiple offender under the provisions of La.R.S. 15:529.1. When the sentencing court is of the opinion that a denial of diminution of sentence is warranted under the specific circumstances of the case, the trial judge's discretion should be exercised under La.C.Cr.P. 890.1(B).

*Id.* at 699.

Louisiana Code of Criminal Procedure Article 890.1 states:

> A. When the court imposes a sentence, the court shall designate whether the crime involved is a crime of violence or an attempted crime of violence as defined or enumerated in R.S. 14:2(13).
>
> B. Notwithstanding any provision of law to the contrary, if a person is convicted of or pleads guilty to a crime of violence as defined or enumerated in R.S. 14:2(13) and is sentenced to imprisonment for a stated number of years or months, the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by R.S. 15:571.3(C) or (D).

We note that the offense at issue in the present case is not a crime of violence enumerated or defined by La.R.S. 14:2(13). Thus, the trial judge in the present case had no authority to deny diminution of sentence pursuant to La.Code Crim.P. art. 890.1. Accordingly, the sentence should be amended to delete the denial of diminution eligibility. *See State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694; *State v. Young*, 04-0029 (La. 5/14/04), 872 So.2d 505. Thus, the district

court is instructed to make an entry in the minutes reflecting this change. *State ex rel. Calvin v. State*, 03-0870 (La. 4/2/04), 869 So.2d 866.

*Sufficiency of the Evidence*

We address Defendant's fourth assignment of error first. Should there be merit to Defendant's assignment relating to sufficiency of the evidence, he would be entitled to an acquittal and the remaining assignment of errors would become moot. *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970 (1981).

Defendant argues that there was no evidence presented at trial which linked him to the crack cocaine found in the blue tin can in his girlfriend's vehicle. Alternatively, Defendant argues that the State failed to prove that he had the requisite intent to distribute the crack cocaine. Defendant further argues that the evidence linking him with possession and distribution was circumstantial.

Under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, on a question of the sufficiency of the evidence, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *See also State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

Moreover, when circumstantial evidence is used to prove the commission of a crime, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." However, this requirement is also subject to the *Jackson* sufficiency standard. "Ultimately, all evidence, both direct and circumstantial must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty

4

beyond a reasonable doubt." *State v. Cummings*, 95-1377, p. 3 (La. 2/28/96), 668 So.2d 1132, 1134.

To support a conviction for possession with intent to distribute, the State must show that an accused was in possession of a controlled dangerous substance and intended to distribute the drug. Louisiana Revised Statutes 40:967(A) provides, in pertinent part, that it is "unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance . . . classified in Schedule II."

At trial, Deputy Christian testified that on June 3, 2004, he had received confidential information regarding the sale of crack cocaine by Defendant. According to the informant, Defendant was driving a gray, four-door Mercury Sable and the drugs were located in a blue tin can kept in that vehicle. The informant advised the deputy that Defendant and the vehicle were in a parking lot near a convenience store in Oakdale. Deputy Christian testified that he located the vehicle on the street next to the parking lot. Defendant was standing about twenty feet away from the vehicle, next to a truck being worked on by a mechanic.

Deputy Christian ran a check on the license plate and learned that the vehicle was registered to Tara Williams. The deputy testified that he asked Defendant about the vehicle and was told by Defendant that the car belonged to his girlfriend and that it had been parked there since 9:00 in the morning to have its air-conditioning unit looked at by the mechanic who was working on his truck. The vehicle was not locked and the keys were in the ignition. Deputy Christian testified that he told Defendant why he was there. He said that Defendant advised him that he had possession of the vehicle and denied the deputy permission to search. Deputy

5

Christian further testified that Defendant took the keys out of the car and locked it, then pulled him aside and admitted there were three or four rocks of cocaine in the vehicle and asked that he be allowed to take the drugs out of the vehicle and leave. Jeffery Manual, a deputy with the Allen Parish Sheriff's Office, stayed with the vehicle while Deputy Christian left to obtain a search warrant. When Deputy Christian returned, he searched the vehicle and found ten individually packaged rocks of a substance which later proved to be crack cocaine in the blue tin can.

Deputy Christian testified that just before he searched the vehicle, Tara Williams came to the scene. After the search, he attempted to talk to Williams regarding the drugs. She told him she was the only one driving the car that day, but then she would not discuss it further. Williams was arrested later in the day and taken to a holding facility in Basile. The deputy testified that the next day Williams contacted him and wanted to give a statement.

On June 4, 2004, Tara Williams's statement was taken. After she was *mirandized*, the interview was taped. The interview was transcribed and placed into evidence at trial as State's Exhibit 11. During the interview, Williams stated that Defendant was the father of one of her children and that he often used her car. On the morning of June 3, 2004, he had used her car to take her to school. He was supposed to pick her up at lunch time, but failed to show up. She got another ride home and Defendant drove her back to school after lunch, and then came back to pick her up after school. She stated that Defendant told her there were drugs in the car and to tell the police that she had driven the car to the place where the mechanic was working on Defendant's truck so that the mechanic could look at the air-conditioning. She stated there was nothing wrong with the air-conditioning unit in the vehicle.

6

At trial, however, Williams testified that she did not recall stating that Defendant told her anything about drugs during the taped interview. On cross-examination, she stated that, because of the child she and Defendant had in common, she saw him regularly, but had no knowledge of whether he used or sold drugs. At trial, she testified that Defendant took her to school in the morning in her car, and took her back to school after lunch. She said that he was using her vehicle because he was having problems with his truck and that he was going to have the mechanic look at the air-conditioning in her vehicle. She denied that the drugs belonged to her and had no idea how the drugs got there.

Calvin Davis, Defendant's brother, was called by the State to testify. The State asked Calvin if he had ever sold cocaine, and he admitted that he had. When the State asked him if he had ever sold cocaine for his brother, he said no. The prosecutor then questioned him about a written statement he had given to Deputy Christian on June 11, 2004, wherein he said that he often sold drugs for Defendant in the recent past. The prosecutor questioned him further about the statement which went into detail regarding how Defendant fronted him the drugs to sell. However, while Calvin admitted he made these statements to Deputy Christian, he testified that he had lied. Calvin explained that Deputy Christian threatened him with some potential charges and a search of his home. Calvin said that he had teenage children at home, that he did not know what they might have in their rooms, and was seeking only to protect himself and his family.

While the State did not admit the written statement into evidence, Deputy Christian took the stand and further testified as to the accuracy and voluntariness of the statement made by Calvin.

7

Defendant called John Hines. Hines testified that he was a part-time mechanic and that he was working on Defendant's truck on the day of the incident. He stated he did not notice the Mercury Sable until the police arrived and questioned him about it. He stated that Defendant was around most of the day in case he needed to run to town for parts for the truck. But he did not pay attention to whether Defendant was there all day long.

In brief, Defendant argues that there was no physical evidence to link him to the drugs located in Williams's vehicle. Defendant states, incorrectly, that Williams testified that she was the only one to drive the vehicle that day and accepted responsibility for the drugs, and that "she repeatedly told the officers that 'whatever was in the vehicle was hers.'" At trial and in the statement made on June 4, 2004, Williams stated that Defendant was in possession of her vehicle all day and that he had driven the vehicle on at least two occasions that day. Moreover, in the interview and at trial, she adamantly denied that the drugs belonged to her.

The State is required to show actual or constructive possession in order to convict. *State v. Trahan,* 425 So.2d 1222 (La.1983). A person is considered to have constructive possession even though the drug is not in his physical custody, if it is subject to his dominion and control. *State v. Smith,* 257 La. 1109, 245 So.2d 327 (1971). The State must also show guilty knowledge; *i.e.*, in this case, that an accused is aware of the illegal drugs in his possession. *State v. Perkins,* 97-1119 (La.App. 3 Cir. 6/17/98), 716 So.2d 120. Deputy Christian testified that Defendant exercised control over the vehicle. When Deputy Christian asked about the vehicle, Defendant told him it belonged to his girlfriend. When the deputy asked if he could search the vehicle, Defendant refused consent, further taking the keys out of the ignition and locking the door. Moreover, Deputy Christian testified that Defendant took him aside

8

and told him there were drugs in the vehicle and requested that he be allowed to take the drugs and leave. We find that the evidence was sufficient for the trier of fact to infer, beyond a reasonable doubt, that Defendant was, at the very least, in constructive possession of the drugs, and had guilty knowledge of what was in the blue tin can.

Defendant further argues that the State failed to show that he had the requisite intent to distribute the drugs. This court has held that in the case of intent to distribute drugs, there is often no direct evidence of the intent; therefore, intent may be inferred from the circumstances. *Perkins,* 716 So.2d 120. As a guideline to determine intent, the Louisiana Supreme Court enumerated the following factors: (1) whether the accused ever distributed or attempted to distribute drugs; (2) whether the drugs were in a form usually associated with possession for distribution to others; (3) whether the amount of drugs created an inference of an intent to distribute; (4) whether expert or other testimony establishes that the amount of drugs found in the accused's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. *State v. House,* 325 So.2d 222 (La.1975).

Using the above guidelines, this court in *Perkins* found that the State failed to show that Perkins intended to distribute the marijuana found in his vehicle. Perkins was sitting in the vehicle with two other men. There were five zip-lock baggies containing marijuana, fifteen marijuana cigarettes, and two partially smoked marijuana cigarettes. This court stated that the only above-enumerated factor present which was consistent with distribution were the zip-lock baggies. However, there was no testimony that such packaging was inconsistent with personal use and, considering there were three individuals, it was not unreasonable to infer that the marijuana was for personal use only. "The intent to distribute may be established

9

solely on the amount found only if the quantity is so large that no other inference is possible." *Perkins*, 716 So.2d at 130.

In the present case, there were ten rocks of crack cocaine, each in individual packages, totaling eleven grams. Defendant argues:

> [t]he amount totaled 11 grams, not a sufficient amount to constitute intent to distribute. As the crime lab expert, Gary Rogers, testified, eleven grams is a 'smokeable amount,' a quantity sufficient only for personal use.

Defendant misrepresents the import of the testimony. The witness did not testify that the amount of the drug was consistent with personal use only. Gary Rogers, director of the Southwest Louisiana Crime Laboratory, testified as to the substance found in the tin can. He identified it as cocaine. On cross-examination, defense asked him:

> Q: Well, could one junkie use that drug, eleven grams. One junkie that was a crack cocaine addict. Could he smoke up eleven grams?
>
> A. I would think so.

The witness testified only that someone could smoke ten rocks of crack cocaine.

In *State v. Francois,* 02-2056 (La.App. 4 Cir. 4/9/03), 844 So.2d 1042, *writ granted*, 03-1313 (La. 11/25/03), 864 So.2d 607, the police discovered Francois and another man sitting in Francois' bedroom, making little foil packages of heroin. There were fourteen packages containing 1.0 gram each, and a small amount of heroin on a plate with a weight of 1.6 grams. The police found a razor blade, plastic bags containing heroin residue, a box of baggies, and $178.00. Noting that intent was a state of mind and applying the factors to determine intent as set forth by the supreme court in *House*, the fourth circuit found that, considering there were two men involved and without other evidence that the packages were made for distribution, there was nothing to indicate that the packages were not for personal consumption. However, the supreme court reversed the fourth circuit's ruling in *State v. Francois*,

10

03-1313, p. 2 (La. 04/14/04), 874 So.2d 125, 127. While agreeing that the amount of the drug was not necessarily indicative of distribution, the "assembly line" process that was observed by the officers reflected "the operation of drugs being prepared for sales." The supreme court held that it was a reasonable inference sufficient enough for the jury to disregard the hypothesis that the drugs were for personal use only.

Considering the fact that the rocks were individually packaged in baggies and that Deputy Christian testified that the confidential informant, who gave very specific details regarding the blue tin can in which the drugs were kept and the vehicle in which the tin can was kept and its location, also told him that Defendant was selling the drugs, we find that the evidence was sufficient to establish the element of intent to distribute drugs.

*Motion to Continue and Motion to Suppress*

For his first assignment of error, Defendant asserts the trial court erred when it denied his motion to continue trial and motion to suppress evidence. Both motions were oral motions, made on the morning of trial. The transcript of the hearing on Defendant's motion to continue is not in the record. Therefore, the record does not indicate the reasons the trial court denied Defendant's motion to continue trial and this court may choose not to address the issue of the motion to continue. However, in his brief, Defendant argues the same grounds for granting his motion to continue trial as he argued to the trial court in support of the timeliness of his motion to suppress the evidence.

Shortly after the State's first witness, Deputy Christian, was sworn in and commenced with his testimony, Defendant moved to suppress the search warrant. After removing the jury and after arguments, the trial court denied Defendant's

11

motion as untimely pursuant to La.Code Crim.P. art. 703(C), which provides as follows:

> A motion filed under the provision of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.

Louisiana Code of Criminal Procedure Article 521, in pertinent part, provides that "[p]retrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate."

In brief, Defendant argues:

> The arrest occurred on June 4th '04. Some two to three weeks before trial, the Defendant, who had only recently been allowed out on bond and began once again to work and erarn(sic) money, was able to hire counsel. Although defense counsel was notified of the trial date because of the close proximity to arrest he believed, based on many years of experience, that the case would not be called to trial and that he would have time to further prepare and file motions, for instance, Discovery, and most appropriate, a Motion to Suppress.

In a minute entry dated June 15, 2004, at the 72-hour hearing, Defendant informed the trial court that he had retained counsel, Mack Frank. Counsel was present. A minute entry dated September 1, 2004, of Defendant's arraignment hearing indicates that defense counsel was not present, but at that time Defendant advised the trial court that he had counsel. The matter was set for pre-trial conference on October 25, 2004, and trial was scheduled for November 15, 2004. Attorney Mack Frank was Defendant's trial counsel. There were no motions, including motions for discovery, filed into the record on Defendant's behalf.

At trial, the trial court questioned defense counsel concerning his failure to file a timely motion and following argument by counsel on the issue, the trial court ruled:

12

All right. So all of that information was there back at the time of the arraignment. So the grounds were there, if there were any grounds. The fact that the defendant hired an attorney late and did not file for discovery and did not get this information until yesterday is not an excuse that the Court will accept. Failure to file without adequate excuse constitutes a waiver.

We find that the trial court did not err when it denied Defendant's motion to suppress the evidence on the morning of trial. Pre-trial motions were ordered to be filed fifteen days after arraignment, which was on September 1, 2004. Even following the pre-trial conference, knowing that trial was schedule for three weeks later, Defendant still failed to file motions, relying instead on the possibility the trial would be refixed for a later date.

Further, as noted above, the record does not indicate on what grounds Defendant argued for a continuance of the trial or why the trial court denied the motion, therefore, this court may choose not to address the issue. However, if the motion was based on the same argument Defendant raised as to why the untimeliness of his motion to suppress was excusable, as indicated in his brief, then the trial court did not err when it denied the motion to continue.

There is no merit to this assignment of error.

In the alternative, Defendant alleges ineffective assistance of counsel for failure to file a motion to suppress the evidence. In *State v. James*, 95-962, pp. 4-5 (La.App. 3 Cir. 2/14/96), 670 So. 2d 461, 465, this court stated:

In order to prove that counsel was ineffective, the defendant must meet the two-pronged test enunciated by the Supreme Court. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that his deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks,* 505 So.2d 714 (La.1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).

Furthermore, the Louisiana Supreme Court has stated:

> A claim of ineffective assistance of counsel generally is more properly raised in an application for post-conviction relief than on appeal. *State v. Hamilton*, 92-2639 (La.7/1/97); 699 So.2d 29, *cert. denied*, [522] U.S. [1124], 118 S.Ct. 1070 (1998). In post-conviction proceedings, the district judge can conduct a full evidentiary hearing on the matter. However, when the record contains evidence sufficient to decide the issue, the appellate court may consider the issue in the interests of judicial economy. *See, e.g. State v. Ratcliff*, 416 So.2d 528 (La.1982).

*State v. Brumfield*, 96-2667, pp. 13-14 (La. 10/20/98), 737 So.2d 660, 668-69, *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267 (1999).

In brief, Defendant states only that "[a]lthough he had retained the attorney some weeks before, said attorney neither filed for discovery or Motion to Suppress or a continuance until the day of trial. The Court ruled the oral motion that he did file for suppression untimely." Defendant makes no further argument. As noted above, not only does a defendant have to show deficient performance, he has to show that the deficient performance caused prejudice in his case. Accordingly, Defendant is relegated to raising the issue of ineffective assistance of counsel in application for post-conviction relief.

*Jury Instructions*

For his second assignment of error, Defendant asserts that the trial court erred when it "refused to specifically instruct the Jury in a manner that could possibly have alleviated the clear and substantial prejudice to the defendant by the description of the crucial witness who did not appear." Defendant's argument, however, does not pertain to jury instructions. Rather, Defendant asserts that the State prejudiced his case when it told the jury, "in no uncertain terms, that he would have a witness [Sam Jones] to demonstrate that the defendant had distributed cocaine that day and it was going to be through this witness that they would prove the 'Intent to Distribute.'" Defendant further asserts that when Sam Jones failed to appear, the State, in the

presence of the jury, told the trial court the "crucial" summary of the witness's testimony.

Initially, we note that Defendant incorrectly states what was said during the State's opening statement. In the State's opening statement, the State said, in pertinent part:

> We will have another witness who testifies that he distributed cocaine at the request of Mr. Sammy Davis. And this is how we intend to prove that Mr. Davis had the intent to distribute the cocaine that he had on the date of June 3, 2004, because of the actual distribution of cocaine by Mr. Davis. That is the gist of the State's case.

The State never mentioned a witness's name.

Defendant further incorrectly states what occurred in the courtroom when the witness failed to appear upon being called to testify. After it became apparent to the State that the witness, Sam Jones, was not going to appear, the State and defense counsel had a conference at the bench with the trial judge. The jury was not privy to this conference. It was at this time that the State told the trial court the sum of the missing witness's testimony and asked that a bench warrant be issued.

At no time did Defendant request a special jury instruction regarding the witness who failed to appear. At the close of the case, after the trial court had read the jury instructions to the jury, it specifically asked whether there were any objections to the charges and defense counsel answered, "No, I don't." Generally, an error not objected to at the time of trial cannot be raised on appeal. La.Code Crim.P. art. 841.

For all the above reasons, this assignment of error lacks merit.

*"Other Crimes" Evidence*

Defendant asserts that the trial court improperly allowed "other crimes" evidence to be admitted without a hearing pursuant to *State v. Prieur*, 277 So.2d 126

15

(La.1973). The evidence of other crimes to which Defendant refers are the statements made by Calvin Davis to the police that he sold drugs for Defendant in the recent past. This statement was read into the record.

Defendant cites to La.Code Evid. art. 404(B), which provides:

> **Other crimes, wrongs, or acts**. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Defendant argues that the recanted statements made by Davis were offered for the purpose of showing Defendant's bad character. At trial, prior to Davis's testimony, Defendant objected to the statements being read because to do so would expose the jury to other crimes evidence. Outside the jury's hearing, the following exchange ensued:

> MR. FRANK: And I think that is going to be prejudicial and inadmissible to bring in other crimes. His character has not been placed at issue by us in any way. His moral character is not at issue.

> MR. DEMORUELLE: May it please the Court, the defendant is charged with possession with intent to sell cocaine. And in order for me to show that he intended to sell cocaine on this date, I will have to show that he had sold cocaine in the past. And that is the relevance, Your Honor, his prior conduct, with the dealing of cocaine.

> THE COURT: All right, the court is going to admit it for that purpose.

Defendant incorrectly argues that the evidence that he sold drugs in the past was admitted to show that he was of bad character and that he had "acted in conformity therewith." Evidence that Defendant sold cocaine in the recent past was admissible as evidence of Defendant's intent to sell cocaine in the present case, which

16

was an essential element of the crime charged. *See State v. Lee*, 25,917 (La.App. 2 Cir. 5/4/94), 637 So.2d 656, *writ denied,* 94-1451 (La. 10/7/94), 644 So.2d 631. As discussed above in Defendant's allegation of insufficient evidence to show intent, one of the factors looked at to discern intent was whether Defendant sold drugs in the past.

Further, as pointed out by the State, pursuant to Article 404(B), other crimes or acts "may be admissible . . . provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial." In the current case, as noted above, Defendant did not file motions for discovery, wherein this type of evidence is generally noticed to an accused.

Finally, "not every *Prieur* violation mandates reversal." *State v. Temple*, 01-655, p. 20 (La.App. 5 Cir. 12/12/01), 806 So.2d 697, 709. The fifth circuit held that evidence of prior drug sales by the accused was permissible to show intent to distribute. The fifth circuit further stated:

> Before a defendant can complain of a *Prieur* violation, he must first show prejudice. [*State v. Pardon,* 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d 50, 57, *writ denied*, 97-2892 (La. 3/20/98), 715 So.2d 1207]. In *State v. Lee*, 25,917 (La. App. 2 Cir. 5/4/94), 637 So.2d 656, 662, *writ denied,* 94-1451 (La. 10/7/94), 644 So.2d 631, the Second Circuit explained that "the rules of *Prieur* were not meant to be used as additional, technical procedures sacramental to a valid conviction" and noted that substantial compliance with *Prieur* is all that is required.

*Id.* at 709.

In the present case, Defendant fails to show prejudice. Despite Defendant's inference otherwise, a pre-trial hearing is not required by the mandates of *Prieur*. As noted above, prior to Calvin Davis's testimony, the trial court held a hearing on whether his testimony was admissible and determined correctly that it was admissible to show the element of intent.

For all the above reasons, the trial court did not err when it allowed the witness's prior inconsistent statements regarding whether Defendant distributed cocaine in the past to establish the element of intent. Accordingly, this assignment also lacks merit.

**DECREE**

We affirm Defendant's conviction for possession with the intent to distribute cocaine, in violation of La.R.S. 40:967(A)(1). However, we amend the Defendant's sentence to delete the statement denying diminution of sentence. The trial court is directed to enter this amendment in the minutes. The Defendant's sentence of twenty years at hard labor to run consecutively to any sentence he might be serving at the time of the present conviction is affirmed as amended.

**CONVICTION AFFIRMED; SENTENCE AMENDED WITH INSTRUCTIONS AND AFFIRMED AS AMENDED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-543

STATE OF LOUISIANA

VERSUS

SAMMIE DAVIS

THIBODEAUX, Chief Judge, dissenting in part.

This court has held that in the case of intent to distribute drugs, there is often no direct evidence of the intent; therefore, intent may be inferred from the circumstances. *State v. Perkins*, 97-1119 (La.App. 3 Cir. 6/17/98), 716 So.2d 120. As a guideline to determine intent, the Louisiana Supreme Court enumerated the following factors: 1) whether the accused ever distributed or attempted to distribute drugs; 2) whether the drugs were in a form usually associated with possession for distribution to others; 3) whether the amount of drugs created an inference of an intent to distribute; 4) whether expert or other testimony establishes that the amount of drugs found in the accused's possession is inconsistent with personal use only; and, 5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. *State v. House,* 325 So.2d 222, 225 (La.1975).

Factors two through five suggest there was insufficient evidence to infer Defendant possessed the crack cocaine for the purpose of distribution. Using the above guidelines, this court in *Perkins* found the State failed to show that Perkins intended to distribute the marijuana found in his vehicle. Perkins was sitting in the vehicle with two other men. There were five zip-lock baggies containing marijuana,

fifteen marijuana cigarettes, and two partially-smoked marijuana cigarettes. This court stated that the only above-enumerated factor present which was consistent with distribution were the zip-lock bags. However, there was no testimony that such packaging was inconsistent with personal use and considering there were three individuals, it was not unreasonable that the marijuana was for personal use only. "The intent to distribute may be established solely on the amount found only if the quantity is so large that no other inference is possible." *Perkins*, 716 So.2d at 130.

In the present case, whether the drugs were packaged in a manner consistent with sales, the fact that the rocks were in small individual baggies does not indicate that they were necessarily for sale. The rocks may have been purchased that way. Unlike *State v. Francois*, 03-1313 (La. 04/14/04), 874 So.2d 125, Defendant was not discovered packaging the rocks. Considering that the vehicle belonged to Defendant's girlfriend, it would not have been unreasonable to find that the ten rocks were for personal consumption between the two individuals. While the ten rocks were packaged individually, without anything more, it was a reasonable hypothesis that the drugs were for personal use only.

As for factor number one, the only evidence offered on whether Defendant sold or attempted to sell drugs in the past was Calvin Davis's testimony. At trial, he recanted the statements he had given to the police on June 11, 2004, affirming that he had received drugs in the recent past from Defendant for the purpose of sale. While Calvin Davis testified at trial that he sold cocaine, he denied that he ever got drugs to sell from Defendant. Regarding the recanted statements he made to the police, on cross-examination Davis testified as follows:

> Q: The testimony that you were talking about, was that
> something that occurred in 2004 or did you just make it up
> entirely or what?

2

A. No, it happened way back about six months after he got out of prison.

MR. DEMORUELLE: I didn't hear the answer.

THE WITNESS: About six months after he got out of prison.

. . . .

Q: Yes. And that would have been about three years ago?

A: Three and a half years ago.

Q. Three and a half years ago?

A. Yes, sir.

Q. Do you know anything at all about Sammie Davis dealing drugs in 2004?

A. No, sir. He told me that he had quit selling drugs after that time. He didn't mess with no more drugs.

The evidence was insufficient to show the necessary element of intent to distribute. Of all the five factors listed above, only two of the factors carry any inference that the drugs were for distribution purposes—that the drugs were packaged in a manner consistent with sales, and the statements made by Defendant's brother prior to and at trial. Considering there were two persons involved, ten rocks of crack cocaine is not such a large amount that could necessarily infer distribution. There was no other evidence of distribution, no money, or baggies other than what the rocks were in. I would vacate the Defendant's conviction and set aside the sentence.

However, complete acquittal is not required. Louisiana Code of Criminal Procedure Article 821(C) permits this court to "modify the verdict and render a judgment of conviction on the lesser included responsive offense." Accordingly, as discussed in the majority opinion, the evidence was sufficient to show that Defendant possessed cocaine in violation of La.R.S. 40:967(C). Defendant

was in control of the drugs that were located in his girlfriend's vehicle and he was aware of the fact that the blue tin can contained rocks of crack cocaine. Therefore, because the evidence was insufficient to prove intent to distribute, a judgment of conviction of possession should be entered by this court, and this case should be remanded to the trial court for resentencing.

For the foregoing reasons, I dissent in part.